Case number 17-6237, Dark Horse Express LLC v. Lancer Insurance Company. No arguments not to exceed 15 minutes per side. Mr. Joseph Pepper for the public. Come on up. Good morning, Your Honors. I'm Ross Pepper. I represent the appellant, Dark Horse Express LLC. This case originates in Dallas, Texas. My client is a motor carrier. It was hauling a load of rather expensive meat from Dallas to Tennessee. Along the way, the trailer gets broken into. Some of the meat goes missing. And the result is that about a month after this break-in, my client's customer, which was PFG, made a claim against Dark Horse for about $260,000. It was the whole value minus what they had been paid by their own insurance company? Is that right? Well, I believe PFG made a claim for the full $260,000 at that time. I thought the whole load was worth $300,000. The whole load was worth $260,000. Okay. All right. That's why we have oral argument. Thank you. And I may have gotten the numbers a little bit mixed up here. I know the whole load was worth $260,000. $40,000 of meat was stolen. All right. I don't think those numbers are really that important to the issues I'm arguing. But what is important is that a month later, PFG, Dark Horse's customer, made a claim against Dark Horse, and Dark Horse paid that claim.  The CARMAC amendment, which is federal law, which is designed to reduce litigation, provides that if you're a motor carrier and you are presented with a valid claim, you have to pay it. And it's Dark Horse's position that it was a valid claim and they paid it. It seems to me that the CARMAC really isn't the issue here. I mean, you had two sources of liability, potentially. The CARMAC amendment, which would only create liability for PFG's actual losses. Is that fair? That's fair. And that's less than the whole amount. I mean, you know, the government said the meat's fine, right? So, I mean, in terms of what do we do with this meat? Well, you know, $30,000 worth was taken away, and arguably that's it. That's the liability under the CARMAC. Well, I would disagree with that. I think that once the seal was broken on this trailer, that meat, they could not sell that meat and their loss was. . . Well, I mean, the Department of Agriculture said it was fine to sell. Correct. But, I mean, it seems like your liability under CARMAC was probably just $30,000. But then you have contractual liability. We do indeed. And you break the seal. Your view, and it seems like the contract bears it out, is if the seal gets broken, the chain of custody gets broken, then PFG is within its contractual rights to refuse the shipment. That's absolutely correct. And at that point, you have to pay them the entire amount of the shipment. Is that correct? For the full value, yes. Now, let me say. . . Well, that's not really what the decision was below, right? It's not really relevant. I bring up the CARMAC amendment just because if this court does believe that it's necessary to go beyond the four corners of the document, we think this court should look to the CARMAC amendment. But we don't think it's necessary to go beyond the four corners. CARMAC helps you that much. But I think that there's a pretty clear-cut case as to your obligations to PFG under the contract. Now, the district court decides the issue on a different basis. What counts as legally must pay, if I recall. It was the basis of the court's decision. But anyway, it's kind of foundational, what I was asking. Sure. The district court's decision, it made two holdings. They were strictly a matter of contract interpretation. The district court made no factual findings whatsoever. So really, whether the U.S. . . . Pardon me? Interpretation of the insurance. It was purely an interpretation of the insurance contract. The district court did not decide . . . As opposed to the carriage contract. Pardon me? As opposed to the carriage contract. It's an interpretation of the insurance contract. Correct, it was. It was an interpretation of the contract between Lancer Insurance and Dark Horse. The district court did not decide that, make any factual finding with respect to whether the meat was suitable or not, the value of the loss. Why don't we go to the insurance contract? That's the issue, right? It is the issue. Let's get there. Okay, I will get there. The reason I brought that up, again, is it's our position that all the court needs to do is look within the four corners of this document, and there's the answer. The district court held that Dark Horse's liability had to be established by a court judgment before Lancer had an obligation to provide coverage. That is an incorrect reading of the policy. That is not what the policy says. So we're talking about legally must pay, that part of the policy? Well, what the district court said was that it had not been established that Dark Horse legally had to pay it. But what the contract says is legally must pay. It does say legally must pay, but for a loss under covered auto's liability coverage, it says you have to have a judgment by court. Our position is if that was meant to apply to the cargo coverage, it should have been in the cargo coverage. Let's say you're right about that. I don't mean to exclude questions, but what about legally must pay? That is part of the cargo insurance rider, isn't it? Correct. It does say we will pay any sums you are legally liable to pay. Legally must pay. Legally must pay. We submit the district court erred in interpreting that phrase. It relied on a case from Tennessee, the Winter v. Nesbitt case, which was completely an opposite. It was a car accident case with an uninsured motorist. The plaintiff sues the defendant, at-fault defendant, and he impledes nationwide the uninsured carrier. A default judgment is entered against the at-fault defendant, and the case then goes to trial, and the jury lets nationwide off the hook. The plaintiff then comes back and says, well, wait a minute. This should have never gone any further than me getting a default judgment against the at-fault driver. Once that happened, I had established nationwide legal liability to pay, and what the court says was no because the uninsured motorist statute is designed to prevent an uninsured motorist carrier from being held liable where a default judgment is entered. So the context of that case is entirely different than the context of this case, and we submit. Yeah, I mean, it would seem like the argument on your side is there is such a thing in the law as a contractual obligation, which is a legal obligation, and sometimes that obligation is an obligation to pay things, and in that case, you legally must pay. Goods are delivered. You have a contract. General Motors has a contract for delivery of, say, tires from a supplier, and they have to pay Michelin $10 million for these tires within 30 days of delivery, and the tires get delivered, and it's day 30, and they haven't paid. They legally must pay. It's not that they have to come to us and get a judgment. They legally must pay right then and there because they made a contract. They made a contract so they don't have to go to a court. That's exactly right, Your Honor. And that would seem to, it just seems pretty straightforward. That's our position. And there are lots of cases that hold that, just what Your Honor said. Which one or two? The most relevant case for this Court is the Certain Underwriters case, which is a Tennessee Appellate Court case from 2002, which the Court construed this very phrase, legal liability, and it said that requires a judgment, and that claim involves stolen cargo, and the Court said the term legal liability must be construed to encompass the contractual liability which the carrier assumed on receipt of the cargo. And that is when we became legally liable for it. The only distinction with that case that I can identify, apart from the fact that it isn't the high court of Tennessee but rather the middle court, right, is that that case involved accrual rather than the issue here about whether it's some other purpose, right? I'm not sure. It's an accrual. It had to do with when it accrued for purposes of statute of limitations. That's exactly right. It's a little bit different from the question of whether it accrued for purposes of legally must pay under an insurance contract. It's taking the words from one context and putting them in the other a little bit. Otherwise, it's directly on point in your favor. That's correct. An insurance company was essentially arguing you've waited too long to file suit, and you can't do that anymore. And the insurer said, well, wait a minute, we've got until somebody sues us and a judgment is entered against us. And the Court said, no, that's not the way it works. Your legal liability happened two years ago. Since you're getting low on time, I do want to ask you, you had a summary judgment motion. They had one district court granted theirs, didn't grant yours. There's this question of whether your liability to PFG was $100,000 or $300,000, starts as $100,000. You're saying you agreed with PFG to bump it to $300,000. You did bump your coverage limit from $100,000 to $300,000. That's in the record, as I understand it. That is in the record. But your contract with PFG required you to bump, said if you're going to revise that contract, you have to do it in writing. And you're saying you did revise it from $100,000 to $300,000, but we don't have anything in writing in the record. So why isn't there a factual issue, at least, as to whether, in fact, that got bumped? Well, we don't think there is, but that would be, that's really not relevant for this appeal. They can argue that if this court reverses the district court. They can go back and argue that you paid a claim you shouldn't have had to pay because you paid way too much. Our position is, under Georgia law, which applies, parties can orally amend a contract, even if the contract says it can only be amended in writing. And Dark Horse's president submitted an affidavit with our summary judgment paper saying that's exactly what we agreed to do. We orally agreed that we would bump the coverage to $300,000. And, in fact, my client paid Lancer $7,000 extra dollars in premium money to bump it to $300,000. Okay. Well, why don't we hear from Mr. McMickle? May it please the Court. Good morning, Your Honors. First of all, I appreciate you letting my in-law, Andrew McClendon, be here with us. Your Honor, you hit it on the head. It is about the policy. And the legally must pay language is really where it starts. The Tennessee case law, the case law throughout the country, says legally must pay means a judgment has to be entered. I understand that, at one level, legally must pay may mean under the contract there is. That seems highly counterintuitive to me. I'm just going to be candid with you. I just really am having a hard time because it's, I mean, contractual obligations are legal obligations. I understand that. I mean, so in my hypo earlier, General Motors gets these tires, it's day 30. Contract says you have to pay $10 million within 30 days of delivery. Is it true on that day that they legally must pay the amount specified in the contract? Is that just, I mean, true or not? Let's say, Your Honor. Well, is it true or not? Depends on the context. I just described. What I would say is in the context of an insurance policy, a third party legal liability insurance policy, the answer is no. Well, okay, but in terms of my hypo, you know, just under the contract, under the commercial contract between those two parties, is it true that General Motors legally must pay that amount that day? You're looking at it from a context of contract law with no other facts? I mean, it could be other facts. Yeah, just that. Limiting it to your narrative, under contract law, there might be an obligation to pay under the contract. What I would say to Your Honor is . . . It's a matter of the meaning of the words. It is. As Judge Ketledge articulated the words, in common English that lawyers use, it would fit within those words. Now, maybe in context, the writers meant something else. Maybe there's a gloss under the law. But I took his question simply to be does legally must pay include contractually must pay. And you've got to concede that lawyers use it that way in a lot of contexts. I would concede that. And I would say that. I would agree with you. But you say here it's different. I want to ask you about this case because you're opposing counsel cites this case that seems to be pretty, if not exactly on point, seems to be pretty darn clearly on point. And your brief just chooses not to mention it, which I found surprising. That's this certain underwriter's case. Sure. Your Honor, he represents . . . Now we're talking the specific context of an insurance contract for cargo, right? We're in the context now. Makes perfect sense. And I agree. And this court says in that context we think legally must pay or whatever attaches at the time of loss. Sure. Your Honor, they relied on that primarily in their reply brief. I didn't file a server reply for one. But the transcares case . . . Well, it's quoted on page 21 of their blue brief. And it seems to be directly on point. Okay. Well, I'll address it. Your Honor, first of all, if you look on the second page of the transcares case, what it says is it cites paragraph 17 in the insurance policy. And all insurance policies aren't the same. Some are different. Particularly Lloyd's policies. I do a lot of Lloyd's work. I mean, for example, they still spell tire with a Y. But in any event, some Lloyd's policies are treated like first-party policies. Okay? So there's a difference between first-party and third-party legal liability policies. Okay? Now, the court there looked at . . . the transcares court looked at the cargo policy as a first-party policy. They cited paragraph 17, which is entitled settlement of the loss. That specific section said all adjusted claims shall be paid or made good to the insured, not the third party, within 90 days. Okay? The way that they . . . or the issue that they can't get past is that our policy is different in the sense that it's a third-party legal liability policy. There's a material difference in the law between first parties. I just . . . I don't know. I mean, I don't understand why that matters for purposes of what legally must pay means. Well . . . Because that just seems to me a pedestrian phrase in the law. That is not affected by this sort of, you know, abstruse distinction between first- and third-party policies. Well, let's look at some other conditions in the policy and try to read it together is all I can say. Yeah, that's fair. So the policy has a right and duty to defend section, which says . . . Right. We say to them, look, for a certain premium . . . They are. Sir? Usually they are. Right. Right. So we said, look, we'll pay up to $300,000 when you legally must pay something. But here's a right that we have. If somebody files a lawsuit, which didn't happen, why isn't filing a lawsuit the precondition for that right arising under the contract? Your Honor, if I go out and I run into somebody on the street out there, right, let's say that it's clearly my fault I ran a red light. But the question becomes the extent of their damages. Sure. Right? I can't, as an insurer, tell State Farm or Great American, whoever the insurance company is that insures my legal liability, hey, I'm writing a check to Mr. X whose leg I broke out on the street when I committed negligence, and I just believe the claim ought to be $400,000. Well, there's no basis upon which you could say I legally must pay $400,000. I mean, you can't point to a legal document of any kind, contract, judgment, whatever, in that hypo. But this is very different. You have a contract which has this very clear trip wire, remarkably clear trip wire for liability. You break the seal, it's over. Now, you would agree that was met here, right? I agree the seal was broken. I would not agree with your premise that there's legal liability once the seal's broken. Under PFG? Yes, sir. Under that contract? Absolutely. Okay, so why? What the contract says, under the cargo liability section, is that transcarrier's liability will be that as a common carrier under CARMAC. Okay? Now, CARMAC, by the way, is an exclusive remedy. It preempts all state law claims. You said it could reject the shipment, in which case they get reimbursed for the cost of the shipment. That's not what it says. What it says is that the legal liability is governed by the CARMAC Amendment. What it says is that if the seal's broken, they may reject it. And then here's the next part, Your Honor. Right. It says they may require the destruction or disposal of the cargo. They did not do that. The reason they didn't do that is because they knew that the cargo was fine. I mean, what's the point of rejecting if you still have to pay for the load? Well, I mean, the reality is they knew it wasn't damaged. Right? And, by the way, PFG didn't reject the load. Well, I don't mean to go down this rabbit hole, but the point is that, at least in their view, here you have a contract which has a clear basis for liability and damages that are almost liquidated in the sense that you reject the whole load. How much does the load cost? That's very different from a hypo, two people just run into each other on the sidewalk. Well, it's different in a way, but, Your Honor, how can it be a liquidated sum when their own insurance company only paid them one-fifth of the claim and they accepted it? They can't win that liquidated argument. I just think we're getting past the issue here. Even in your example about $400,000, where it might not be $400,000, right? You just, your car ran into somebody. I don't see why they can't pay the $400,000. And then Sue, you're saying we were obligated to pay, and you defend on the ground that you weren't obligated to pay, and presumably you win and everything works fine. I'm seeing why that's a strange way of reading English contract language. You can say, oh, well, no one ever does that, but the cases they cite seem to say that. That's what you do. So if the cases say in that context you do it and it makes perfect sense to do it, although you could have a system that's different, such as the provision of your contract that doesn't apply that says you have to have a judgment, right? There's that provision in this very contract which says, what is it in the other part of the, I'm not remembering the precise part of your contract which says you have to have a judgment. Do you know what I'm referring to? Your Honor, I'm not. Yeah, that's a different, that's the auto carriers. The auto carriers. The auto carriers. Well, you rely on it in your brief. We do. But at the end of your brief. But the answer that's given to that is that that's in the motor carriage, rather than the cargo part. So I guess my point is you could have a contract which says you need a judgment first. That would be fine. But absent that, I don't see why we don't just assume that you don't need one, unless there's something really clear from the context which suggests that's the way the word should be identified. And your argument seems to be, well, I don't think so. I don't mean to come across that way. What I mean to tell you is that if you look at the cases cited on page 18 to 20 of our brief, all of those cases uniformly say around the country that legally must pay in the context of insurance means that a judgment has to be entered. Which is the strongest one of those? Sir, there's a SIDS case, I think, that's a cargo case. And then it's really uniform case law. I'm asking for the strongest one so I can see if it really says that. I'd have to look at it, Your Honor, but it starts on page 18 of our brief. I don't know. I mean, I have a hang-up in insurance contract cases about doing what I call interpreting provisions in gross. You know, this idea that certain types of provisions are interpreted a certain way. I frankly just don't buy that at all. I look at the terms of the individual contract. Because they usually invariably, unless it's a total form contract, sometimes you see those. But, you know, there are variations. There are variations in the actual phrase we're interpreting. There are variations in the context around it. And I don't know, unless one of these is exactly the same contract almost as this, which I kind of doubt, it just doesn't, that's not very persuasive to me. Well, they all hang around the legally must pay, legally obligated, legally liable. All those phrases are used interchangeably. But, Your Honor, let me get to something, a condition in the policy. And what we say in our brief is that, look, we have a right and duty to both defend and have the right to settle any claim. Now, there's a condition just behind that that says the insured must assume no obligation, make no payment, and incur no expense without our consent. That condition is found in the record. Is this in the cargo insurance, Ryder? This is in the motor carrier conditions. Why are we talking about motor carrier? I mean, because cargo insurance happens to revise one word. Your Honor, it's also in the commercial inland marine conditions, which are in the policy, which modify the cargo endorsement. How does that happen? I mean, I'm very skeptical that the motor carrier provisions are, in fact, incorporated into this cargo insurance, Ryder. I'll just be candid with you about that. I understand. Your Honor, the cargo endorsement says, with respect to coverage provided by this endorsement, the provisions of the coverage form, referring to the motor carrier coverage form, apply unless modified by this endorsement. So that's, you know, those would be the very general provisions that are not contained within any particular section from motor carrier, et cetera. Well, there's motor carrier conditions that apply to all the coverages provided under the motor carrier coverage form, one of which is the cargo endorsement. The cargo endorsement, Your Honor, simply adds a section 7 to the motor carrier coverage form, and the general conditions found on document 6-2 at page 115 modify all of the coverages provided under that form. So it's pretty mechanical. You're relying on this provision that I was just referring to, is that now? I'm relying on it in part. But what I'm saying to Your Honor is if you read that, what it says, Your Honor, is that no It says you have to have a judgment, right? We don't have to get there. It does say that, but we don't have to get there. I'm trying to say that there's an easier way to affirm the trial court. That provision says, and by the way, this is just a couple of conditions down from the condition that I referred to just a moment ago, which says that the insured must assume no obligation, make no payment, or incur no expense without our consent, or they do it at their own cost. Is this within covered autos, or is this above that in language that is not within that particular coverage? It's in the general motor carrier conditions. It's on page 115 of document 6-2. And, Your Honor, it says very clearly, and by the way, this is also in the commercial inland marine conditions, which if you'll look at Is this language which says that you have to get a judgment first? Is that applicable? Is this the language you're talking about now? No, this is language that comes just before that. What I understand, Your Honor, is that the opening phrase of that no legal action against us subsection does say it applies to commercial auto liability coverage. So I understand where a court might say, well, since the cargo endorsement is added on and they didn't specifically change that language, maybe that's a challenge. Maybe that's some kind of ambiguity, even though they say the policy is not ambiguous. My argument is that the policy also says just before that, you can assume no obligation, make no payment, or incur no expense without our consent. Your Honor, they absolutely did that. We have under the policy the right and duty to both settle and defend. Lawsuits. Or claims. I think the question is whether this provision you're citing, in fact, applies to a cargo insurance issue as opposed to a motor carrier issue. I understand you're making a structural argument that it does. I'm just saying I think that's great language for you if it applies. Yes, and I believe it does. Did you make this argument in your brief? What we said, Your Honor, in the brief, it's on page 16, 17, 21, and 22. What we said is that they paid the claim as a volunteer. I understand. And that's the argument. Now, Your Honor, the last thing. It's a volunteer with a gun to his head, but I understand your argument. But is the particular language from the motor carrier coverage part of the contract relied upon in your brief, apart from the part of that language that deals with having legal liability must be established by a judgment? We refer to the motor carrier conditions on those pages and say that what that prohibits is the insured from doing exactly what they did here, whether it's with a gun to their head or not. I understand that's an awkward situation. I'm not saying it's not. I'm just trying to wait for the page. I mean, I read this carefully. I don't remember that. If you look at page, I know it's on page 16 and 17 and 21 and 22, where we reference the motor carrier conditions in general, and we say that they paid the claim as a volunteer. So that's the argument. But, Your Honor, the last thing. You have a tough road to hoe in saying motor carrier applies to cargo insurance. Well, Your Honor, the conditions are incorporated into the cargo endorsement. Let me say it this way. How? Because of this thing at the very beginning of the cargo endorsement that says something, you know, modifies one definition somewhere. Well, Your Honor, what it says on page one of the endorsement is that the provisions of the coverage form apply unless modified. Okay? Then when it goes on to say. . . The coverage form is different than the motor. . . Well, okay. You know what? I mean, I think. . . Why don't you take 30 seconds on this because we're over time. And, you know, we'll. . . I understand your argument and the structural argument you're trying to make. So we'll look at it again. And, Your Honor, I would submit to you that if they can get past the right or they can't get past the right and duty to defend section of the policy, which, by the way, talks about claims or suits. All right. Not just suits, Your Honor. But then the policy or the endorsement says that it adds Section 7 to the motor carrier coverage form. The conditions that I'm citing for you are the common motor carrier conditions that apply to all of the coverages provided under the cargo coverage form. Your Honor, this no legal action against us provision that you mentioned, Judge Rogers, that's in those common motor carrier conditions. I'm just asking you where it's in the brief. I don't see it before page 21. And when you get to page 21, you appear to be looking at the legal liability provisions, not the stuff you were lying back on in page 1617. But we're out of time. I'll take another look. I've read it twice and I don't see it. We cite the duty to defend and then the motor carrier conditions. We just say those support the argument that it's a voluntary payment. But it's on that, page 115. Any questions? Okay. All right, Mr. Mickel. Thank you very much. We'll hear rebuttal. It's not true that the motor carrier, that all the provisions of the motor carrier coverage form apply to cargo coverage. That's just not the way this policy works. In bold, all caps, and we didn't cite this in our brief. I saw it going through this again. The front page of the cargo endorsement, besides saying it modifies the motor carrier form, says, in all caps, this endorsement changes the policy. It can't be that all the provisions of the motor carrier coverage form apply to the cargo insurance form. Here's why. The motor carrier coverage form, which applies to property damage and personal injury resulting from an accident, has a specific exclusion for any liability assumed pursuant to a contract. So if all the provisions of the motor carrier coverage form apply to cargo insurance, if you're hauling cargo pursuant to a contract, which you always are, you've just bought coverage that's worthless, completely worthless. It also works the other way. The cargo insurance endorsement says, we won't pay for any property damage to a covered auto. So it would essentially nullify a provision in the motor carrier coverage form. Okay, let me ask you a question. Mr. McNichol was just talking about the defense cost provision of the cargo insurance rider, and that's the one that says we have the right and duty to defend any insured against a suit seeking damages, etc. And it says, we may investigate, negotiate, and settle any claim or suit. However, we have no duty to defend any insured against a suit for loss, etc. But it does say settle any claim or suit. So why doesn't this give them the right to investigate something that is pre-lawsuit, such as the dispute with PFG, before you guys write a check? Because they've already agreed that, because they essentially have a conflicting provision. Because they've said, we will pay all sums you legally must pay, and we were legally obligated to pay this sum. They still have that right. They have the right to investigate. There could be a situation in which, for example, a motor carrier did not pay a claim, and they would have the right to investigate. But that provision doesn't trump the clear intent of this policy, which is, once you legally must pay something, it is a covered claim. That's what they've told the insured. All right. Lancer, in the, they could have made, if there's any ambiguity in this policy, we do submit, opposing counsel's right, we submit there's not. But if there is, it ought to be construed against him. Here's what they could have done. They make very clear that if you have a, if your claim falls under covered auto's liability coverage, if it's for property damage or personal injury resulting from an accident, that, my mind just took a left and I meant to take a right, that if you have that type of claim, then you have to, we don't have any obligation until a judgment is obtained against you. And under Tennessee law, if you put a provision in one part of a contract and then you leave it out of another part of a contract, there's a presumption that you did that on purpose. It's also kind of common sense. Yeah. If they wanted to make that clear, Lancer could have done that. This differentiation between first party and third party insurance, I understand it, but it's kind of an ad hoc justification of Lancer's position in this case. And I again say, Lancer, they've made this argument that we're turning liability insurance on its head because every time we pay a claim, wow, they're automatically liable. That's just not accurate. They can still go to trial, and if they prove that we shouldn't have paid this claim, it wasn't a valid claim, they don't have to provide coverage. It's like a suit within a suit, right? It's like a suit within a suit. Correct, right. If this court were to reverse the district court, we'll be back in district court, and they will be arguing, we don't have to cover this claim because the USDA released me, you paid beyond the limitation of liability. There are cases, I agree with Your Honor, there are all kinds of cases that talk about legal liability, but what's relevant here for this court is looking at this particular policy, and a lot of those cases it's like trying to put a round peg in a square hole. In fact, some of those cases where they quote that the court said legal liability requires a judgment, if you look back at the underlying policies, the policies actually said legal liability requires a judgment be entered against the insurer. That's all I have, unless Your Honors have a question for me. Very well. Thank you. Thank you both for the fine arguments. Case to be submitted. Clerk may call the next case.